UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JACK E. CAPPEL | CIVIL ACTION |
| VERSUS | NO. 17-4822 |
| ALMATIS BURNSIDE, L.L.C. | SECTION "N" (3) |

## **ORDER AND REASONS**

Presently before the Court is the motion for summary judgment filed by Defendant Almatis Burnside, L.L.C. (Rec. Doc. 17), which was filed relative to the claims asserted by Plaintiff Jack E. Cappel, pursuant to the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2611, *et seq.* Specifically, Plaintiff contends that Defendant's termination of his employment unlawfully interfered with his right to take FMLA leave to care for his sick mother and was retaliation for Plaintiff's own protected activity, *i.e.* Plaintiff's approved FMLA leave from November 14, 2016 until January 1, 2017. In considering Defendant's motion, the Court has carefully considered the parties' competing submissions, the remainder of the record in this matter, and applicable law. For essentially the reasons stated by Defendant in its memoranda (Rec. Docs. 17-3 and 33), **IT IS ORDERED** that Defendant's motion is **GRANTED** and Plaintiff Jack Cappel's FMLA claims are **DISMISSED WITH PREJUDICE**.

In reaching this conclusion, the Court is cognizant that Defendant's covert surveillance of Plaintiff lasted only three days whereas Plaintiff's leave was approved for several weeks. Plaintiff, however, has not asserted, much less offered supporting evidence, that the three-day surveillance period – during which Plaintiff went to his mother's nursing home only once and

1

for approximately only 40 minutes[1] – did not provide an accurate representation of his usual daily activities whilst he was on FMLA leave. For instance, Plaintiff has not shown that he was ill on those three days, or simply enjoying a much needed respite while someone else was available to relieve Plaintiff in caring for his mother. Similarly, Plaintiff has not established that he simply required a few additional days to complete essential personal or household tasks before resuming his mother's daily care.

To the contrary, Plaintiff readily admits that he saw his mother only 4-5 times for less than an hour each visit while he was on leave and that he was "sure he could have" worked and still given the support he did to his mother.[2] Indeed, Plaintiff candidly testified that he spent more time doing other things while on FMLA leave than supporting his mother and that he saw her about the same amount of time while he was on FMLA leave than when he was not.[3] Specifically, he "would go and see her when he could" and that he "didn't do nothing out of the ordinary" and "never changed [his] routine."[4] In short, given the evidence at hand, the Court can only conclude that Plaintiff undeniably – and admittedly – failed to utilize his leave in the manner contemplated by the FMLA, approved by his employer, and certified by his mother's doctor, *i.e.* to provided "[increase] family support at end of life."[5] *See e.g., Elsensohn v. St. Tammany Parish Sheriff's Office,* 530 F.3d 368 372 (5th Cir. 2008) (citing 9 U.S.C. § 2601(b)(2)) (FMLA permits eligible employees to take

---

[1] *See* Rec. Doc. 17-5; Rec. Doc. 29-18

[2] *See* Rec. Doc. 17-4, p. 20 of 69. Plaintiff's mother suffers from lung disease and receives 24-hour care in a nursing home.

[3] *Id.* at pp. 63 - 64 of 69.

[4] *Id.* at p. 64 of 69.

[5] *See* Rec. Doc. 17-4, pp. 65 - 67 of 69; Rec. Doc. 17-5; Rec. Doc. 29-17

reasonable leave *to care for* a child, spouse, or parent who has a serious health condition)(emphasis added); *see also Scruggs v. Carrier Corp*, 688 F.3d 821 (5th Cir. 2012) (citing 29 U.S.C. § 2614(1)(1) (employee is entitled to reinstatement under the FMLA "'only if he takes leave under [the FMLA] for the intended purpose of the leave'")

Furthermore, it is likewise readily apparent, despite Plaintiff's strenuous assertions to the contrary, that no triable issue remains relative to whether Plaintiff was properly notified of the conditions and limitations of his FMLA leave. Without question, Plaintiff undoubtedly knew that he had been granted leave from work, in accordance with the provisions of the FMLA, to enable him to provide additional care for his ailing mother that he could not accomplish while being at work. To argue otherwise is disingenuous. That is the sole identified reason for leave set forth on the written application that Plaintiff submitted to his employer. Moreover, and, in any event, Plaintiff had already requested, and been denied, FMLA leave time to work on his damaged home.[6]

Lastly, the Court similarly finds no evidentiary support for Plaintiff's assertion that he suffered an adverse employment action because he attempted to take FMLA leave. Plaintiff was *granted* the several weeks of FMLA leave he had requested. Additionally, an employer is permitted to investigate an employee's leave conduct when given reason to suspect that the employee may be misusing approved leave. Here, Lynn Gautreau, Defendant's former Human Resources Manager apparently received information suggesting Plaintiff was misusing his FMLA leave.[7] Finally, Plaintiff's contention that he was terminated because Gautreau had an "axe to grind with him" is attributed to the results of a prior arbitration hearing, not his instant request for FMLA leave.

---

[6] *See* Rec. Doc. 17-4 at pp. 20 - 21 of 69; Rec. Doc. 17-6.

[7] *See* Rec. Doc. 17-6; Rec. Doc. 29-19.

3

Accordingly, because the Court finds that Plaintiff has not put forth sufficient evidence to bear his burden under Rule 56 of the Federal Rules of Civil Procedure, Defendant's motion for summary judgment seeking dismissal of Plaintiff's claim has merit and thus is granted.

New Orleans, Louisiana, this 25th day of April 2018.

                                            **KURT D. ENGELHARDT**
                                            **UNITED STATES DISTRICT JUDGE**